MARY J. RAMSDELL, appellant,

*v.*

JOHN J. STREETER, respondent.

[Filed March 5th, 1901.]

Where testatrix's mental capacity was not shown to have been affected at the time she made her will, evidence that the principal legatee was not related to her, but was a mere friend of the family, and had assisted her in the management of the estate, and that during the three days between the drawing and execution of the will testatrix talked with him about the same, and he had spoken in letters and in a newspaper of a trust respecting the property, was not sufficient to show undue influence, where he had nothing to do with the execution of the will, and testified that he did not know how she intended to dispose of the property until after the will was drawn.

*Mr. Henry S. Alvord* and *Mr. David J. Pancoast,* for the appellant.

*Mr. N. Henry Stevens* and *Mr. Howard Carrow,* for the respondent.

REED, VICE-ORDINARY.

Caroline P. Dexter, on May 18th, 1899, made her will, and died on July 20th. By her will she gave to William E. Thompson $1,000. He was a grandson of a sister of the deceased husband of testatrix. She gave E. Martin Dexter and Charles F. Dexter each $200. They were nephews of her deceased husband. She left the residue of her estate to John J. Streeter, who was no relation of testatrix or her husband. She left no children. Her two nearest relatives were a niece, Mary J. Ramsdell, and another niece, Ellen T. Stanley. There were also grandnieces. She left an estate estimated at from fifty thousand dollars to sixty thousand dollars, of which all but about fifteen thousand dollars had been left to her by her husband who had predeceased her on February 1st. The attack made upon the will is that it was procured by Streeter by the use of undue influence.

Ramsdell *v.* Streeter.

Streeter had been a friend of testatrix and of her husband during their joint lives, all living in Vineland. He was the owner and editor of a Populist newspaper printed and published in that place, for which paper testatrix occasionally wrote.

After the death of the husband of testatrix Streeter had devoted a great deal of time to looking after her. He had stayed with her at night, had cared for her when she was sick and had taken charge of her business which the death of her husband had thrown upon her. She had a high regard for him and was very grateful for his kindness. She had no kin of close relationship, as already observed.

There is no evidence of mental decline nor of mental confusion, apart from that which was naturally occasioned by the death of her husband and the consequent devolution upon her of the management of his estate. There is no testimony, apart from the admissions of Streeter himself, that he unduly influenced the testatrix in the disposition of her property by will. Streeter was undoubtedly in a position by which he could have done so, and although the testatrix was of a mental capacity equal to any woman, yet his confidential relations with her throws the burden upon him of showing the fairness of her testamentary act in his favor. He denies that he ever said anything to her about this matter, or indeed that he knew what she had done until after the will was written. He says that this talk with her was while the instrument was in her hands, during the three days between the time the scrivener had prepared it and the day it was executed. He says that in this conversation he made no proposition or suggestion whatever.

The attack upon the will is grounded entirely upon the legatee's own admissions.

It is insisted that it appears from these admissions that the testatrix gave the residue of her estate to Streeter to carry out certain purposes upon which they had agreed.

It is not sufficient that it should appear that testatrix intended that the property should be devoted by the legatee to purposes other than his personal use. Unless he induced this disposition by expressly or impliedly assenting to the expressed purposes of the testatrix, it would not affect the gift at all.

Nor if he did so induce the testatrix would it avoid the will, for if the purposes were legal and ascertainable, he would be compelled to execute the trust (*Vreeland et al., Executors,* v. *Sarah A. Williams et al., 5 Stew. Eq. 734*), and if they were illegal or unascertainable he would be held to be a trustee for the heirs or next of kin. *2 Underh. Wills 220; In re Boyes, L. R. 26 Ch. D. 531.* It must further appear that he fraudulently procured the execution of the instrument by unduly influencing her to make her will to accomplish these purposes.

The admissions of the legatee are introduced, not as impeaching but as substantive evidence, and were not objected to.

These admissions are of two kinds. The first class consists of those contained in his letters and in the articles published in his newspaper, "The Independent." The second class consists of those verbal admissions testified to have been made by him to certain witnesses. An examination of the first class of admissions do not, in my judgment, show that any undue influence was exerted upon the testatrix. He speaks of a trust and of knowing the views of the testatrix and of wishing the assistance of the other legatees in disposing of the property, but he nowhere says how he knows her views, or that there was any specific conversation in respect to the execution of the will. He evidently wrote the letters to placate the disappointed legatees and to avoid a contest. He probably thought, as he says he thought, that testatrix wished that some scheme should be carried out and he then intended to carry it out when he wrote the letters. They fail to show that he urged any such scheme upon her attention or insisted that she should give the property to him to be disposed of for any specific purpose.

The verbal admissions, as sworn to, are much stronger and go so far as to make him say that he framed the will and that he influenced her in remembering other legatees.

The reproduction of the words of another by memory is a difficult undertaking, and when the memory is influenced by the unconscious bias of personal interest, its recollection is to be received with great circumspection. Now I have no doubt that he talked very much in the same way that he wrote. I do not think, however, that he said that he framed the will, for such a

Ramsdell *v.* Streeter.

statement seems to be inconsistent with the facts. The will was framed from a copy given to testatrix, at her request, by a friend. It was actually drawn by Mr. Benthall from personal direction of the testatrix. Of course the legatee may have framed the will by conversation with her, which influenced her directions to the scrivener, but I do not think so. Whether his admissions are sufficient to show that he held this property as trustee for some ascertainable purpose, or for the heirs, is not a question now pressing for solution. Upon the question which is before me, namely, whether he fraudulently procured the execution of this instrument by unduly pressing the testatrix to make this disposition in his favor, for the purpose of carrying out any such purpose, I am of the opinion that he did not.

The decree below will be affirmed.